## Commonwealth *v.* Papy, Appellant.

Argued November 18, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Bernard L. Segal,* for appellant.

*James D. Crawford,* Assistant District Attorney, with him *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE JONES, January 30, 1970:

On May 4, 1948, William H. Magee was struck three times on the head with a hammer, while in an apartment he was sharing with Austin Hudson and Frank J. Papy, Jr., and his wallet and overcoat were stolen. On May 9, 1948, Papy, the defendant-appellant, was apprehended and indicted for aggravated assault and battery and for robbery. The next day, Papy signed a statement confessing to the crime. The defendant en-

tered a plea of *nolo contendere* on July 14, 1948, and was sentenced to serve seven and a half to fifteen years.

On November 25, 1948, Magee died as the result of the beating inflicted by Papy almost seven months earlier, and Papy was indicted for murder. In February, 1949, on the advice of two court-appointed counsel, Papy pleaded guilty to murder generally. After a hearing before a three-judge panel, the defendant was found guilty of first-degree murder and sentenced to life imprisonment.

In 1966, having made other unsuccessful attempts to overturn his conviction,[1] Papy filed a petition under the Post-Conviction Hearing Act[2] and was permitted to file post-trial motions *nunc pro tunc.* A hearing was held in December, 1968, before a three-judge panel, at which Papy was again represented by counsel. His motions in arrest of judgment and for a new trial were denied. The defendant has now appealed from the judgment of sentence.

We will first consider defendant's contention that his confession, which was presented to the court at his guilty-plea hearing in February, 1949, was constitutionally inadmissible. Papy argues that the confession was made involuntarily because he was given inadequate warnings,[3] and because the written statement did not fully record his oral statement.[4] The record is devoid of any evidence which might support either of

---

[1] See, *e.g., United States ex rel. Papy v. Maroney,* 352 F. 2d 523 (3d Cir. 1965) ; *Commonwealth ex rel. Papy v. Maroney,* 417 Pa. 368, 207 A. 2d 814 (1965).

[2] Act of January 25, 1966, P. L. (1965) 1580, §1, 19 P.S. §§1180-1 *et seq.*

[3] Counsel for defendant has properly conceded the inapplicability of the *Miranda* and *Escobedo* standards.

[4] Papy has now claimed, for the first time after twenty-one years, that he killed Magee to ward off an attack, and that he had told this to the officer who took his statement.

these claims. The argument is specifically refuted by the following passages from the confession itself.

"Q. Do you know why you have been arrested and brought to Philadelphia? A. Yes, because you told me yesterday that the man I hit in the head is in a dying condition in the hospital. Q. Frank, you are being charged with robbery and aggravated assault and battery by a hammer. Anything you say will be taken down in this statement and used as evidence in your trial in court. Do you understand that? A. Yes, sir. Q. Is the statement you are about to make made without fear or force or threats or promises of reward made to you by me or any other peace officer? A. Yes, I have not been mistreated. . . . A. [relating circumstances of the crime] I recalled that he [Magee] always had large sums of money on him and I took the hammer from the bureau drawer and hit him on the head with it, figuring that it would knock him out, but after I hit him he looked up at me and said not to do it any more. Then I got scared and hit him two more times. Then I grabbed his wallet and his raincoat. . . . Q. Is there anything else you want to say? A. I didn't intend to kill him, I only wanted to knock him out and get his money but after I hit him the first time, he looked up at me and I got scared and hit him two more times. . . . Q. Is everything you have told us the truth? A. Yes, sir. Q. Can you read and write English? A. Yes, sir." In view of the strong prima facie validity of the above statement and the dearth of any evidence to the contrary, we find that Papy's confession was voluntary. In addition, the circumstances of this case also appear to fall within the rule of law in *Commonwealth ex rel. Walls v. Rundle*, 414 Pa. 53, 55-56, 198 A. 2d 528, 529 (1964), stated as follows: "His plea constituted an admission of his guilt and of all the facts averred in the indictment; it constituted a waiver of all nonjurisdictional defects and defenses. [Citing au-

thorities.] Appellant's allegations raise no question of jurisdiction, nor do they raise any question as to whether the substantive offense itself was committed." We also note that no contentions similar to those presently before us were made when the statement was first admitted. *See Commonwealth v. Garrett,* 425 Pa. 594, 229 A. 2d 922 (1967).

The second argument made on Papy's behalf is that his plea of guilty to murder generally should not originally have been accepted because, at the hearing on the plea in February, 1949, his testimony raised an issue of self-defense. At the end of the hearing, after all the evidence had been introduced, the defendant was summoned to the bar of the court and, without being sworn, was questioned by the three judges. In the middle of this questioning, the following exchange took place.

"JUDGE CRUMLISH: Why did you hit Magee with the hammer? THE DEFENDANT: Magee attacked me. JUDGE LEWIS: What was that? THE DEFENDANT: Magee attacked me. JUDGE LEWIS: He what? MR. LIPSCHUTZ [Assistant District Attorney]: Attacked him. JUDGE LEWIS: A strange time to say that for the first time. JUDGE CRUMLISH: All right." The possible question of self-defense was never pursued or even raised by the defendant or by either of his court-appointed counsel, other than for the above unsworn and totally unsubstantiated statements.[5] In fact, defense counsel conceded that they had no argument to make with respect to the degree of guilt, but only as to the punishment to be imposed. At this point in time we can only

---

[5] Defense counsel, while cross-examining two witnesses, did ask them about the victim's sexual habits. However, the hearing court ruled, in both instances, that the question was out of order. No exceptions were taken, nor offers of proof made. Judge LEWIS indicated that the inquiry was an improper attempt to show the poor moral character of the victim. If defense counsel had something else in mind, the court could and should have been notified.

speculate as to what Papy had in mind during the above colloquy. We find that such speculation would be improper because: since the statement was not made under oath, it is unclear what events Papy might have been referring to;[6] any claim of self-defense would directly contradict all the evidence of record, including defendant's own sworn confession; and the issue was raised for the first time at the hearing in December, 1968.

In short, the record shows that the defendant has intentionally robbed and killed a man, confessed to the crime, pleaded guilty with the aid of counsel, and successfully avoided the death sentence. Now, twenty years later, he claims that the hearing court erred by not investigating the possibility of self-defense. We find no basis in law or in fact for the defendant's present position, which is directly contrary to the great weight of evidence on the record.

Judgment affirmed.

Mr. Justice ROBERTS concurs in the result.

---

[6] For example, these statements could be simply reconciled with Papy's written confession if, as the result of prior homosexual advances by Magee, the defendant had then decided to rob the victim.